UNITED STATES of America, Appellee,

v.

**Jack E. WHITE, Appellant.**

UNITED STATES of America, Appellee,

v.

**Gene KUYKENDALL, Appellant.**

**Nos. 81-1420, 81-1421.**

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 14, 1981.

Decided Feb. 26, 1982.

---

**11.** Ark.Stat.Ann. §§ 85-2-318.1, 318.2, 318.3.

John F. Murray, Acting Asst. Atty. Gen., Michael L. Paup, Robert E. Lindsay, Wilmer Parker, III (argued), Attys., Tax Div., Dept. of Justice, Washington, D. C., for appellee.

Bradley D. Jesson, Fort Smith, Ark. (argued), Betsy Hall, Van Buren, Ark., E. J. Ball, Kenneth R. Mourton, Stephen E. Adams (argued), Ball & Mourton, Fayetteville, Ark., for appellant White.

P. H. Hardin, Hardin, Jesson & Dawson, Fort Smith, Ark., for appellant Kuykendall.

Before GIBSON, Senior Circuit Judge, BRIGHT, Circuit Judge, and LARSON, Senior District Judge.*

BRIGHT, Circuit Judge.

Jack E. White, manager of the Farmers Co-op of Arkansas and Oklahoma (the Co-op), and Gene Kuykendall, an independent auditor of the Co-op, appeal their jury convictions of conspiracy to defraud the United States by impairing or impeding the Internal Revenue Service (the IRS) in the ascertainment and collection of corporate income taxes from the Co-op, in violation of 18 U.S.C. § 371 (count I), and of willfully subscribing to false and fraudulent Co-op income tax returns in 1973 and 1974, in violation of 26 U.S.C. § 7206(1) (counts II and III).[1]

On appeal, defendants contend that (1) comments by the trial judge, evidentiary rulings, and the jury instructions denied them due process by precluding them from presenting their theory of defense to the jury; (2) that the court erred in failing to require the Government to disclose to defendants exculpatory or favorable evidence under the Jencks Act, 18 U.S.C. § 3500, and *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and (3) that the statute of limitations bars conviction on the conspiracy charge in count I. After careful review of the record, we affirm the convictions on all counts.

I. *Background.*

The Farmers Co-op of Arkansas and Oklahoma was organized in 1946, and from 1948 until the early 1970's, it enjoyed tax-exempt status.[2] In 1973, an IRS auditor proposed revoking the Co-op's tax-exemption after reviewing the Co-op's books and records for 1971 and 1972. The Co-op agreed to the revocation and then filed corporate income tax returns (Forms 1120) for 1973 and 1974.

In December 1975, IRS agent Frank Matthews began an examination of the Co-op's 1973 and 1974 income tax returns. Matthews referred the case to the Criminal Investigation Division of the IRS in February 1976. The Government subsequently obtained an indictment against Jack E. White, general manager of the Co-op, and Gene Kuykendall, a public accountant who had prepared the Co-op's tax returns for the years in question.

The indictment charged that White had engaged in a course of self-dealing with the Co-op, and that White and Kuykendall had conspired to conceal from the IRS the true nature of White's transactions with the Co-op. In addition, the indictment charged that White and Kuykendall knowingly made false income tax returns on behalf of the Co-op in 1973 and 1974.

---

* EARL R. LARSON, United States Senior District Judge for the District of Minnesota, sitting by designation.

1. The district court, the Honorable Oren Harris, United States Senior District Judge for the Western District of Arkansas, fined White $3,000 on each count. The court also sentenced White to three years' imprisonment to run concurrently on each count, but provided for six months' confinement and eighteen months' probation to run concurrently on each count suspending the remainder of the sentence.

The court fined Kuykendall $2,000 on each count. After sentencing Kuykendall to three years' imprisonment on each count, the court suspended all but sixty days' confinement, and provided for eighteen months on probation to run concurrently on each count.

2. The Co-op had previously qualified for tax-exempt status under 26 U.S.C. § 521.

II. *Due Process.*

A. *Alleged Denial of Right to Present Theory of Defense to Jury.*

White and Kuykendall contend that the trial court's evidentiary rulings, comments, and instructions to the jury denied them due process by precluding them from presenting their theory of defense to the jury.

IRS agent Frank Matthews testified for the Government regarding a course of self-dealing between White and the Co-op. In 1974, the Co-op decided to finance the construction of new Co-op facilities through an industrial development bond issue authorized by Ark.Stat.Ann. § 13–1601 et seq. ("Act 9" bonds). The Co-op itself had sufficient funds available to pay for construction of the new facility; however, at the instance of Jack White the Co-op entered into a convoluted financing arrangement with the City of Van Buren, Arkansas. On behalf of the Co-op, the City of Van Buren issued industrial development bearer bonds in a principal amount of $1,500,000. The bond agreement obligated the Co-op to pay bondholders interest at the rate of eight percent per annum over the twenty-year life of the bonds. The interest was purportedly tax-exempt under I.R.C. § 103.

The bond underwriter refused to market the bonds out of concern that the local market serviced would not readily purchase the bonds. Because the Co-op itself could not purchase the issue and retain a federal tax exemption on the interest, White arranged an interest-free loan of $1,500,000 from the Co-op to himself, which he used to purchase the entire issue of bonds. White, in turn, sold bonds to other individuals, and transferred the funds he received from these sales to the Co-op in repayment of his loan. He never executed a note to the Co-op evidencing this loan.[3]

In 1975 and 1976, Jack White received from the Co-op $77,200 and $72,400 respectively in interest on the Act 9 bonds he held. White's personal income tax returns for those years, which Gene Kuykendall prepared, did not report the interest as income. By manipulating the books and records of the Co-op, White and Kuykendall masked the true nature of the industrial development bond arrangement, and disguised payments of taxable compensation to White as purportedly tax-exempt interest. *See infra* pp. 1131–1133 (discussing White's personal income tax returns).

After Frank Matthews testified regarding the Act 9 bonds, defense counsel cross-examined him about the proper tax treatment of the Co-op's interest-free loan to White. Matthews testified that he did not question the Co-op's right to make interest-free loans to its employees, officers, or directors, as long as "it's an arms-length transaction." Defense counsel then inquired about Matthews' familiarity with several tax cases dealing with corporate loans, without interest or security, to the corporation's officers, directors, and employees.[4]

At that point, without objection by the Government, the court reminded defense counsel that the court had the duty and responsibility of instructing the jury on the law applicable to the case. When defense counsel asserted the right to cross-examine Matthews as an expert on matters within his expertise, the court opined that the tax cases cited had no relevance to the instant case, but allowed the line of questioning to proceed.

When Matthews then denied familiarity with the cases cited, defense counsel attempted to frame a general question about the legal rule on interest-free loans by a corporation to an officer. The court interrupted and advised defense counsel that the

---

3. Financing the construction of new Co-op facilities in this manner enabled White to receive purportedly tax-exempt interest payments from the Co-op on the bonds he held. Apart from the interest payments to bondholders, this arrangement cost the Co-op an additional $50,000, the fee the bond underwriter charged for its services.

4. White's attorney asked Matthews about *Tennessee-Arkansas Gravel Co. v. Comm'r*, 112 F.2d 508 (6th Cir. 1940); *Zager v. Comm'r*, 72 T.C. 1009 (1979); *Greenspun v. Comm'r*, 72 T.C. 931 (1979); and *Dean v. Comm'r*, 35 T.C. 1083 (1961).

court would instruct the jury on the applicable law at an appropriate time.[5]

White and Kuykendall now argue that the court's action in curtailing cross-examination of Matthews denied them the right of confrontation and prevented them from presenting their theory of defense to the jury. White and Kuykendall maintain that the cases they mentioned to Matthews support their treatment of the bond interest on White's personal income tax returns. At least, appellants assert, they had a right to allude to these cases as support for their treatment of the interest income and thereby negate the Government's charges of *willful* tax fraud. White and Kuykendall contend that the court prevented them from presenting to the jury their theory of defense, *i.e.*, lack of specific intent to disguise the actual form of the Co-op's financial transactions.

■ We do not agree. This record discloses no prejudicial error. The trial court has wide latitude in limiting the scope of cross-examination. *United States v. Drake*, 542 F.2d 1020, 1022 (8th Cir. 1976), *cert. denied*, 429 U.S. 1050, 97 S.Ct. 762, 50 L.Ed.2d 766 (1977). Here, the court did not abuse its discretion in limiting defense counsel's cross-examination of Matthews, regarding particular tax cases. Despite its expressed concern about the relevance of the cases to which defense counsel referred, the court did not prohibit the line of questioning altogether. Eventually, however, the court halted defense counsel's questioning about particular cases and "legal principles," because it is the role of the court, not the jury, to determine the issues of law. *United States v. Jordan*, 508 F.2d 750, 753

(7th Cir. 1972), *cert. denied*, 423 U.S. 842, 96 S.Ct. 76, 46 L.Ed.2d 62 (1975).

### B. *Court's Comments on Evidence.*

White and Kuykendall also contend that the court unfairly prejudiced their effort to defend the charges against them by indicating that it did not consider the cases relied on by defendants applicable to their case. Appellants maintain that the court's comments denied them a fair trial by portraying them as presenting an inaccurate statement of the law. We also reject this contention.

■ The trial court has broad discretion in commenting on evidence. *United States v. Eagan*, 516 F.2d 1392 (8th Cir.), *cert. denied*, 423 U.S. 856, 96 S.Ct. 106, 46 L.Ed.2d 81 (1975). Here, the court did not err by commenting on the relevance of cases relied on by defendants. The court has responsibility for directing the jury in matters of law, and may comment on the evidence to give appropriate assistance to the jury, *Quercia v. United States*, 289 U.S. 466, 469–70, 53 S.Ct. 698, 699, 77 L.Ed. 1321 (1933), so long as it does so fairly and impartially. *Gant v. United States*, 506 F.2d 518, 520 (8th Cir. 1974), *cert. denied*, 420 U.S. 1005, 95 S.Ct. 1449 (1975). In this case the court did not express an opinion on the defendants' guilt or innocence, nor did the court, by its comment, act as an advocate for the prosecution. *United States v. Williams*, 505 F.2d 947, 948 (8th Cir. 1974). We, therefore, conclude that the court's comments would not preclude a fair evaluation of the evidence by the jury.

> THE COURT: I think that is a matter of law the Court is going to have to decide Mr. Ball, as I have indicated now. Regarding the application of individual cases, it seems to me makes it necessary for the Court to rule that this is a matter of law and it is the responsibility of the Court to tell the jury at the proper time what the law is.
> MR. BALL: May I make my record on it, Your Honor.
> THE COURT: Yes sir.

---

**5.** The following colloquy occurred as defense counsel continued to cross-examine Frank Matthews:

> Q. Are you familiar with those cases, Mr. Matthews?
> A. No sir not off hand. It's possible that during my experience as a Revenue Agent that I may have read some of these cases.
> Q. Well let me state it, again, this way. Do you agree then with the legal principle that a corporation may loan its funds to its officer's, director's, employee's without interest and even—

C. *Instructions.*

■ White and Kuykendall argue that the trial court denied them the right to present their theory of defense to the jury by refusing to give requested jury instructions regarding, *inter alia*, the legality of interest-free loans, tax-minimization plans, the Act 9 bonds, and the reliance on professional opinions in business and tax affairs. A defendant in a criminal case is entitled to an instruction that informs the jury of his theory of defense if it contains a correct statement of the applicable law, and if the evidence supports the proffered instruction. *United States v. Brake,* 596 F.2d 337, 339 (8th Cir. 1979); *United States v. Hill,* 589 F.2d 1344 (8th Cir.), *cert. denied,* 442 U.S. 919, 99 S.Ct. 2843, 61 L.Ed.2d 287 (1979); *United States v. Rabbitt,* 583 F.2d 1014 (8th Cir.), *cert. denied,* 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979); *United States v. Nance,* 502 F.2d 615 (8th Cir. 1974), *cert. denied,* 420 U.S. 926, 95 S.Ct. 1123, 43 L.Ed.2d 396 (1975).

■ In this case, White's proposed instructions 14, 15, 16, 17, 18, and 19, and Kuykendall's proposed instruction 14 did not pertain to contested issues of fact to be submitted to the jury. Instead, these proposed instructions referred to a taxpayer's right to structure business transactions, including interest-free loans, in a way that minimizes taxes. White's proposed instruction 20 asserted the right to seek and rely on the advice of experts. The Government, however, had not disputed these contentions at trial. Thus, giving these proposed in-

structions to the jury would have been superfluous. Because the court need not submit instructions on issues not raised by the evidence at trial, *United States v. Scheufler,* 599 F.2d 893 (9th Cir.), *cert. denied,* 444 U.S. 933, 100 S.Ct. 279, 62 L.Ed.2d 191 (1979), the court in this case properly refused to submit these instructions.

Accordingly, we reject defendants' argument that the district court's conduct of the trial denied them due process.

III. *Introduction of Personal Income Tax Returns.*

The indictment charged defendants with criminal violations in connection with the 1973 and 1974 corporate income tax returns of the Co-op. Jack White contends that the trial court improperly admitted his personal income tax returns for 1975 and 1976 because these returns were not responsive to the indictment. The court admitted White's personal income tax returns over White's objection, on the condition that the Government connect them up to the conspiracy charge. White argues on appeal that the Government failed to connect up White's returns to the conspiracy, and that their admission prejudiced White by injecting into the case the issue of proper tax treatment of the interest on the Act 9 bonds.

We note, first, that among the thirty-four overt acts alleged in furtherance of the conspiracy charged in count I of the indictment, two items related to Jack E. White's personal income tax returns for 1976 and 1977.[6] The personal income tax returns

---

**6.** Items 26 and 33 referred as follows to White's personal tax returns for 1975 and 1976:

26. That on or about June, 1976, JACK E. WHITE and GENE KUYKENDALL caused to be prepared and filed with the Internal Revenue Service the 1975 personal federal income tax return of JACK E. WHITE which did not disclose the receipt of $71,600 in interest from the bonds referred to in paragraph (10).

33. That on or about June, 1977, JACK E. WHITE and GENE KUYKENDALL caused to be prepared and filed with the Internal Revenue Service a personal income tax return for the calendar year 1976 on behalf of JACK E. WHITE which failed to disclose the receipt by JACK E. WHITE of $66,800 in interest received from the bonds as described in paragraph (10); this return also reported the pur-

chase and sale of land in Springfield, Missouri which resulted in a purported $48,000 loss. We note that the amounts of purportedly tax-exempt interest White received in 1975 and 1976 varied between the indictment and the Government's brief.

White also declared a loss of $48,000 in 1976 on a transaction he entered with Co-op funds, and on which he in fact realized a profit of $24,000. White obtained $1,200,000 from the Co-op, with which he made loans to personal friends charging them twelve percent interest. White received a total of $1,344,000 in repayment of the loan. He in turn repaid the loan ($1,200,000) to the Co-op, plus interest at the rate of only ten percent ($120,000), thereby realizing a gain of two percent interest on the amount loaned, or $24,000. White declared the $144,000 interest as long-term capital gains,

were relevant to the charge that White and Kuykendall acted in concert to defraud the IRS by concealing the true nature of White's self-dealing transactions on both the Co-op's books and on White's personal records. White did not report as income the $77,200 and $72,400 he received in 1975 and 1976 respectively as interest on the Act 9 bonds he held. The Government maintained that White should have reported the interest as income because the Co-op had arranged White's interest-free loan as a means of indirectly providing compensation to White.

■ Rule 401 of the Federal Rules of Evidence defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." White and Kuykendall sought to prove lack of willfulness to defraud the IRS by attempting to show the unsettled state of the tax law governing nonexempt cooperatives. More telling on the issue of intent to defraud, however, are the *facts* that reveal how White put Co-op funds to his own use, and how White and Kuykendall reflected these transactions on the books of the Co-op in an effort to portray them as tax-exempt. Because White's personal finances so intertwined with those of the Co-op, the entries on White's personal income tax returns became relevant on the issue of defendants' intent to impair or impede the IRS in the ascertainment and collection of taxes from the Co-op. The trial court did not abuse its discretion under Fed.R.Evid. 403 in admitting White's personal income tax returns as bearing on the issue of intent to conspire to defraud the United States.

half of which was taxable ($72,000). *See* 26 U.S.C. § 1202 (1976). He then listed the payment of $120,000 in interest to the Co-op as an ordinary expense, which he offset against the long-term capital gain for a purported loss of $48,000 on the transaction.

7. The Jencks Act provides in pertinent part:
(b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant,

## IV. *Jencks Act and Brady Material.*

In response to White and Kuykendall's pretrial motions for all exculpatory information and material, the Government acknowledged its duty under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), to provide evidence favorable to the accused, but denied awareness of such material.

After IRS Special Agent Gene Hornbeck testified for the Government, White's counsel asked him on cross-examination whether he had prepared any written memoranda in connection with his investigation. Hornbeck stated that he had made a written request for a legal opinion from the regional counsel of the IRS, but did not recall receiving a written opinion in response. Although the court ruled that any written response "was an internal memorandum having to do with a legal opinion within the agency itself and would not be subject to the Jencks Act[,]" [7] the Government nevertheless sought to obtain the administrative file which might contain a copy of Hornbeck's request.

After retrieving the file in question, the Government advised the court that it did not, in fact, contain either Hornbeck's request or a memorandum of a legal opinion, and offered the file to the court for an *in camera* inspection. The court concluded that the Government had properly pursued the matter to determine whether such a document existed, and whether it was Jencks material. Both the court *and* defense counsel accepted the Government's assurance that the file did not contain Jencks material and the court did not demand an *in camera* inspection of the file.

■ Appellants cannot now argue that the court erred by not inspecting the file *in camera*. We believe the court properly re-

order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use. [18 U.S.C. § 3500(b) (1976).]

lied on the good faith representation of the Government that no Jencks material existed as had been suspected. Furthermore, the Jencks Act requires that

> the court shall, *on motion of the defendant*, order the United States to produce any statement * * * of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. [18 U.S.C. § 3500(b) (emphasis added).]

White and Kuykendall withdrew their motion for production of the purported document, and therefore have no ground to appeal the court's action.

■ Finally, we agree with the district court's ruling that any such legal opinion would be an internal agency memorandum, not a "statement" within the meaning of the Jencks Act. *See Goldberg v. United States*, 425 U.S. 94, 106, 96 S.Ct. 1338, 1346, 47 L.Ed.2d 603 (1976) (proper application of Jencks Act will not compel disclosure of Government lawyer's personal beliefs, trial strategy or legal conclusions); *Canaday v. United States*, 354 F.2d 849, 859 (8th Cir. 1966) ("criminal action memorandum" made by regional counsel in connection with prosecution for willful evasion of income tax not producible under Jencks Act).

■ We also reject appellants' argument that the court's action violated the rule of *Brady v. Maryland, supra. Brady*

requires the prosecution to produce "evidence favorable to an accused * * * where the evidence is material either to guilt or to punishment[.]" *Brady v. Maryland, supra*, 373 U.S. at 87, 83 S.Ct. at 1196–97. An intra-agency legal opinion does not constitute such evidence.

## V. *Statute of Limitations.*

Appellant Kuykendall maintains that the three-year statute of limitations in 26 U.S.C. § 6531[8] bars the conspiracy charge in count I of the indictment. Kuykendall contends that none of the eight exceptions providing for a six-year statute of limitations applies in this case. We disagree.

■ Count I of the indictment charges that White and Kuykendall

did unlawfully, knowingly and willfully conspire, combine, confederate, and agree together and with each other to defraud the United States of America in the exercise of its lawful governmental function by *impeding, impairing, obstructing and defeating* the lawful functions of the Internal Revenue Service of the Treasury Department of the United States in the ascertainment, computation, assessment, and collection of the revenue, to wit: corporate income taxes of the Farmers Coop of Arkansas and Oklahoma. (Emphasis added.)

---

**8.** 26 U.S.C. § 6531 provides in pertinent part:

§ 6531. Periods of limitation on criminal prosecutions

No person shall be prosecuted, tried, or punished for any of the various offenses arising under the internal revenue laws unless the indictment is found or the information instituted within 3 years next after the commission of the offense, except that the period of limitation shall be 6 years—

(1) for offenses involving the defrauding or attempting to defraud the United States or any agency thereof, whether by conspiracy or not, and in any manner;

(2) for the offense of willfully attempting in any manner to evade or defeat any tax or the payment thereof;

(3) for the offense of willfully aiding or assisting in, or procuring, counseling, or advising, the preparation or presentation under, or in connection with any matter arising under, the internal revenue laws, of a false or fraudulent return, affidavit, claim, or docu-

ment (whether or not such falsity or fraud is with the knowledge or consent of the person authorized or required to present such return, affidavit, claim, or document);

(4) for the offense of willfully failing to pay any tax, or make any return (other than a return required under authority of part III of subchapter A of chapter 61) at the time or times required by law or regulations;

(5) for offenses described in sections 7206(1) and 7207 (relating to false statements and fraudulent documents);

(6) for the offense described in section 7212(a) (relating to intimidation of officers and employees of the United States);

(7) for offenses described in section 7214(a) committed by officers and employees of the United States; and

(8) for offenses arising under section 371 of Title 18 of the United States Code, where the object of the conspiracy is to attempt in any manner to evade or defeat any tax or the payment thereof. [26 U.S.C. § 6531 (1976).]

This allegation clearly charges an offense within the plain meaning of subsection (1) of 26 U.S.C. § 6531, which applies a six-year period of limitations

> (1) for offenses involving the defrauding or attempting to defraud the United States or any agency thereof, *whether by conspiracy or not, and in any manner*[.] (Emphasis added.)

See *United States v. Fruehauf Corp.*, 577 F.2d 1038, 1070 (6th Cir.), *cert. denied*, 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978); *United States v. Lowder*, 492 F.2d 953, 956 (4th Cir.), *cert. denied*, 419 U.S. 1092, 95 S.Ct. 685, 42 L.Ed.2d 685 (1974).

Count I also falls within the plain meaning of subsection (8) of 26 U.S.C. § 6531, which governs

> (8) * * * offenses arising under section 371 of Title 18 of the United States Code where the object of the conspiracy is to attempt *in any manner* to evade or defeat any tax or the payment thereof. (Emphasis added.)

See *United States v. Fruehauf Corp., supra,* 577 F.2d at 1070.

The last overt act charged in count I occurred in September 1977, when White and Kuykendall filed the Co-op's 1976 corporate income tax return. The indictment was filed September 5, 1980, well within the six-year period of limitations. We therefore deem all counts of this indictment timely.

VI. *Summary.*

The indictment in this case focused on the acts of Jack White and Gene Kuykendall in manipulating the corporate records of the Farmers Co-op of Arkansas and Oklahoma to disguise the true nature of the Co-op's receipts and disbursements. The Government prosecuted White and Kuykendall because of their acts of deception in intentionally mischaracterizing and in failing to report accurately transactions of the Co-op.

White and Kuykendall based their defense, in part, on their contention that recharacterizing the transactions at issue according to the Government's view would not affect tax liability. The Government did not base this prosecution on an assertion of tax liability or deficiency in the amount of taxes paid by the Co-op. Rather, the Government sought to prove that White and Kuykendall had not properly disclosed the true nature of the Co-op's revenues and expenses, thereby preventing proper ascertainment of the Co-op's actual tax liability.

After careful review of the record, we conclude that Judge Harris afforded appellants a fair trial and committed no prejudicial error. The record clearly demonstrates that White and Kuykendall manipulated the Co-op's finances to serve their own personal ends, and that they distorted the Co-op's records of receipts subject to corporate income tax. We conclude that the grounds asserted on appeal fundamentally lack merit, and, accordingly, we affirm these convictions on all counts.