# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2010

_____

| | | |
|---|---|---|
| Gloria Warren, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | |
| v. | * | |
| | * | Appeal from the United States |
| | * | District Court for the |
| State Farm Fire & Casualty Company, | * | Eastern District of Arkansas. |
| | * | |
| Defendant - Appellant, | * | |
| | * | |
| Countrywide Home Loans, Inc., | * | |
| | * | |
| Defendant. | * | |

_____

Submitted: January 17, 2008
Filed: July 10, 2008

_____

Before COLLOTON and SHEPHERD, Circuit Judges, and GOLDBERG,[1] Judge.

_____

SHEPHERD, Circuit Judge.

Gloria Warren brought this suit against State Farm Fire & Casualty Company ("State Farm") to recover the proceeds of an insurance policy after her home burned and State Farm denied the claim. At trial, State Farm asserted that the policy was void

_____

[1]The Honorable Richard W. Goldberg, United States Court of International Trade, sitting by designation.

on two grounds: (1) Warren, or individuals acting on her behalf, intentionally set the fire[2] and (2) Warren made material misrepresentations following the loss.[3] After the presentation of the evidence, the district court[4] granted a directed verdict for Warren on State Farm's material misrepresentation defense. The jury returned a verdict in favor of Warren, rejecting State Farm's arson defense. Accordingly, the district court entered judgment for Warren. State Farm appeals, seeking reversal of the directed verdict on material misrepresentation and the jury's verdict on arson, and requests that the case be remanded for a new trial on both issues. For the reasons stated below, we affirm.

I.

This case arises out of a fire at Gloria Warren's house in Earle, Arkansas in the early morning hours of March 14, 2005. At the time of the fire, Warren was staying at her son's mobile home located approximately fifty feet behind the house. At the time of the incident, State Farm insured the Warren home against fire. According to the local fire chief, the house was locked when the fire department arrived, there were no signs of forced entry, and the fire had two separate points of origin. He opined that the fire had been intentionally set. State Farm hired a cause-and-origin investigator who also determined that there were two separate and independent points of origin and that accelerants were present.

---

[2]The policy, in a section entitled "Intentional Acts," provides: "If you or any person insured under this policy causes or procures a loss to property covered under this policy for the purpose of obtaining insurance benefits, then this policy is void and we will not pay you or any other insured for this loss."

[3]Pursuant to the policy, State Farm's coverage was void if Warren "intentionally concealed or misrepresented any material fact or circumstances relating to [the] insurance whether before or after a loss."

[4]The Honorable Garnett Thomas Eisele, United States District Judge for the Eastern District of Arkansas.

In the course of State Farm's investigation of Warren's claim, she gave two lengthy statements to State Farm representatives. In a March 23, 2005 statement to a State Farm claims representative, Warren denied having any prior insurance loss claims, stated that she did not have any judgments against her, stated that she was two months delinquent on her mortgage payments but did not realize this until after the fire, and denied any knowledge of what caused the fire. Warren stated that she learned of the delinquency when Countrywide Home Loans, Inc. ("Countrywide"), the mortgagee of the Warren residence, contacted her at work the day before she gave her initial statement. On March 31, 2005, Countrywide issued a written notice of delinquency and threat of foreclosure.

On May 5, 2005, Warren gave a second statement, this one under oath and to a State Farm attorney. Warren admitted that, contrary to the information she provided at her first statement, she had a 2002 insurance loss claim arising out of a car fire. During the course of the statement, State Farm informed Warren that, despite her declaration at her first statement that she was not aware of any judgments against her, there was a 2001 default judgment against her son, Johnny Warren and Gloria Warren, as co-signer on a car note with Johnny for approximately $8,000.00. Warren stated that she was not aware of this judgment prior to State Farm's disclosure. Regarding the status of Warren's mortgage, she provided to State Farm the post-fire notification of delinquency and threat of foreclosure she received from Countrywide. Finally, Warren maintained that she had no knowledge of the cause of the fire.

On July 11, 2005, State Farm issued a letter denying Warren's claim alleging that: (1) "Warren or someone at her direction [was] responsible for the fire" and (2) "she . . . made material misrepresentations to [State Farm]." The letter did not specify the substance of the alleged misrepresentations. Warren then filed this lawsuit in an Arkansas court. State Farm removed the action to the United States District Court for the Eastern District of Arkansas. During her deposition, Warren stated that she had

-3-

received a letter from Countrywide informing her that it was going to foreclose on her house and that the company had contacted her son, Johnny, about the matter. When asked whether she received a notice of foreclosure from the mortgage company on March 8th, six days before the fire, Warren replied, "I think so." Warren further stated that the delinquency on her mortgage had not been straightened out before the fire.

At trial, State Farm's defense mirrored its bases for denying Warren's claim–her policy was void due to arson and material misrepresentation. Warren testified that she had, at times, fallen behind on her mortgage payments and some of her other bills and that she had received notice of foreclosures before and had paid the delinquency. Warren further testified that she was unsure of what she had said about her receipt of notice of delinquency in her May 5, 2005 sworn statement because she "was really confused" about which delinquency on her mortgage the questions addressed. She went on to explain that she had been delinquent on her mortgage in the Fall of 2003 and Winter of 2005. Warren stated that she paid the first arrearage, about $3,000, in January 2004, about 14 months before the fire, with funds she borrowed from "Mr. Stein," whom she had not mentioned previously. Warren testified that she learned of the second delinquency approximately two weeks after the fire.

At times during her trial testimony, Warren appeared to continue to confuse the two instances of delinquency at trial.[5] However, later in her trial testimony, State

[5]For example, Warren initially testified at trial that she paid the first delinquency in December 2004, about three months before the fire. However, Warren later testified that she borrowed money from Mr. Stein to pay off the first delinquency in "January '04." State Farm's counsel stated that Warren must have meant January 2005, about two months before the fire. Warren asked, "We're talking about January '04?" At that point, the Court stated, "You [Warren] said the matter came up before, that is, the foreclosure, and it was taken care of. Is this what you're talking about in 2004?" Warren responded affirmatively.

Farm's counsel asked, "[D]id you have notice that this mortgage company was about to come in there and take this house away from you before this fire?" Warren responded, "I didn't have notice before the fire." Counsel, "You did not?" Warren, "I told you, that was when I was thinking about the other time when the house was in foreclosure I paid."

Following the presentation of the evidence, Warren made a Motion for Directed Verdict or Judgment as a Matter of Law on State Farm's material misrepresentation defense. The district court orally granted the motion and then instructed the jury:

> The Court advises you that it has dismissed the defendant's affirmative defense based upon the concealment and fraud provision of the insurance policy. You are not to concern yourselves with the reasons for the Court's decision to dismiss the affirmative defense. The affirmative defense based upon the arson provision remains for your consideration.

The case was submitted to the jury on special interrogatories, and the jury responded that it did not find, by a preponderance of the evidence, that Warren intentionally burned the insured property or caused it to be burned. The jury awarded Warren $15,500 in damages for the loss of her personal property and additional living expenses. The district court entered judgment in favor of Warren for $49,757.07 for the loss of her dwelling after setoff, personal property damages, additional living expenses, and $8,588.88 in statutory penalties under Arkansas Code Annotated section 23-79-208.[6] The district court also determined that Warren was entitled to $56,074 in prejudgment interest, postjudgment interest, and attorneys' fees in the amount of $23,619.42. State Farm brings this appeal.

---

[6]Insurance companies liable for losses that "fail to pay the losses within the time specified in the policy after demand is made . . . shall be liable to pay the holder of the policy . . . , in addition to the amount of loss, twelve percent (12%) damages upon the amount of the loss, together with all reasonable attorney's fees for the prosecution and cancellation of the loss." Ark. Code Ann. § 23-79-208(a)(1).

## II.

"We review the grant of a motion for directed verdict *de novo,* applying the same standard used by the district court," which is Federal Rule of Civil Procedure 50. Randall v. Federated Retail Holdings, Inc., 429 F.3d 784, 787 (8th Cir. 2005). Pursuant to Rule 50, judgment as a matter of law is appropriate "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue . . . ." Fed. R. Civ. P. 50(a)(1). This is a demanding standard such that motions for directed verdict "should be granted only when the evidence produced by the party opposing the motion, 'when given the benefit of all reasonable inferences, would not suffice as the basis for a rational conclusion in that party's favor.'" Madison v. Frank, 966 F.2d 344, 345 (8th Cir. 1992) (quoting Lowe v. J.B. Hunt Transport, Inc., 963 F.2d 173, 175 (8th Cir. 1992)). As a court sitting in diversity, we apply Arkansas substantive law to determine whether Rule 50's standard was satisfied. PHL Variable Ins. Co. v. Fulbright McNeill, Inc., 519 F.3d 825, 828 (8th Cir. 2008). As to State Farm's second contention, we will reverse for new trial on the basis of a district court's improper comment on the evidence only if it amounts to an abuse of the court's broad discretion. United States v. White, 671 F.2d 1126, 1130 (8th Cir. 1982).

## A.

State Farm alleges that the district court erred in directing a verdict for Warren on the material misrepresentation defense because Warren made four representations in her initial statement to the State Farm claims representative from which a reasonable jury could conclude that Warren intentionally concealed or misrepresented material facts or circumstances relating to the insurance. The alleged misrepresentations are: that she had not had any other fire loss; that she did not have an outstanding judgment against her; that she did not know she was behind on her

mortgage payments at the time of the fire; and that she had no knowledge of how the fire occurred.

Under Arkansas law, Warren, as the claimant, bears the initial burden of demonstrating a prima facie case that the damages sought are covered under the insurance policy. See Farm Bureau Mut. Ins. Co. of Ark., Inc. v. Foote, 14 S.W.3d 512, 517 (Ark. 2000). State Farm does not dispute that the Policy provides coverage for the damages arising out of the Warren house fire; however, State Farm asserts that such coverage is void due to Warren's alleged material misrepresentations, which State Farm bears the burden of proving. See id. Whether Warren's statements challenged by State Farm amount to material representations voiding the policy is governed by the language of the insurance contract. See Willis v. State Farm Fire & Cas. Co., 219 F.3d 715, 719 (8th Cir. 2000) (stating that, in Foote, the Arkansas Supreme Court "interpreted the language of the insurance contract" in determining whether the insureds had made material misrepresentations voiding the policy); Foote, 14 S.W.3d at 522-23.

Pursuant to Warren's insurance policy, a material misrepresentation exists where she "intentionally concealed or misrepresented any material fact or circumstances relating to [the] insurance whether before or after a loss." Accordingly, State Farm must show that a misrepresentation was both intentional and material. Even more basic, a statement challenged as a material misrepresentation must actually be a *misrepresentation*, i.e. "untrue, incorrect, or misleading . . . ." Webster's Third New International Dictionary Unabridged 1445 (1986). State Farm argues that Warren's statement to its claims representative that she had no knowledge of how the fire occurred was a material misrepresentation. However, State Farm has failed to offer any evidence suggesting that Warren had any knowledge of the fire's origin, and our review of the trial record yielded none. Thus, there was no basis for a reasonable jury to find the statement to be a misrepresentation, and we need not address Warren's

intention in making the statement or its materiality to State Farm's investigation of the Warren claim. See Madison, 966 F.2d at 345.

Warren's incorrect statement that she had no outstanding judgments against her is not a material misrepresentation as defined by the Policy because State Farm has presented no evidence that, in making the statement, Warren possessed the requisite intention to mislead. State Farm presented no evidence that Warren was served in relation to the 2001 default judgment or that any attempt to enforce the judgment had ever commenced. Without any evidence that Warren was aware of the judgment when she gave her contrary statement, no reasonable jury could find that Warren intentionally concealed the judgment from State Farm. See id.

The final two alleged material misrepresentations are insufficient as a matter of law due to State Farm's failure to offer any evidence of materiality. Under Arkansas law, "a fact or circumstance is material if it pertains to facts that are relevant to the company's rights to enable the company to decide upon its obligations and to protect itself against false claims." Willis, 219 F.3d at 718 (quotations omitted). Accordingly, "[a] misrepresentation may . . . be material even if it does 'not ultimately prove to be significant to the disposition of the claim, so long as it was reasonably relevant to the insurer's investigation at the time[.]'" Id. (quoting Wagnon v. State Farm Fire & Cas. Co., 146 F.3d 764, 768 (10th Cir. 1998)); see Allstate Ins. Co. v. Voyles, 65 S.W.3d 457, 462 (Ark. Ct. App. 2002) ("Under Arkansas law, a fact or circumstance is material if it pertains to facts that are relevant to the insurer's rights to decide upon its obligations and to protect itself against false claims.") (citing Willis v. State Farm Fire & Cas. Co., 219 F.3d 715, 719 (8th Cir. 2000)).

In Willis, which also involved a house fire and an insurer asserting the material representation defense, this court reversed the district court's grant of judgment as a matter of law in favor of the insured. 219 F.3d at 717. There, Mr. Willis represented to the insurer that he did not believe his wife played any role in setting the fire. Id.

However, a friend of Mr. Willis's testified that Mr. Willis had stated that he suspected that his wife started the fire because he observed her moving personal items out of the house shortly before the fire started. Id. at 717-18. The Willis Court found Mr. Willis's misrepresentation material because "[i]f such information had come to light at an earlier point in the investigation, the direction of the investigation and the resources allocated by [the insurer] to conduct it might very well have been different and more effective." Id. at 718.

Warren stated to the claims representative that she had never had any prior fire losses. Warren corrected this at her sworn statement, when she informed State Farm that she had a car fire claim in 2002. There is no evidence that the prior car fire was an arson fire, and Warren disclosed the incident as well as the surrounding circumstances two months before State Farm denied her claim. Whatever relevance the prior car fire claim had, State Farm presented no evidence to show that its resources or the direction of its investigation would have been different had it been apprised of the prior fire loss in Warren's first statement. Accordingly, Warren's initial misrepresentation was not material within the meaning of Willis.

Warren told the representative that she was unaware of the delinquent status of her mortgage indebtedness at the time of the fire. Assuming that this was an intentional misrepresentation, Warren also disclosed, in the same statement, that she was, in fact, delinquent on her mortgage at the time of the fire. Thus, State Farm was informed by Warren of the delinquency over two months before it denied her claim. In order to be material, a misrepresentation must, at least, somehow impact the insurer's investigation of the claim. Id.; Voyles, 65 S.W.3d at 462. State Farm has produced no evidence that Warren's knowledge of the status of her mortgage, one way or the other, would have altered the course of its investigation or its treatment of her claim in any way. Without such evidence, no reasonable jury could find that Warren's statement that she lacked knowledge of the delinquency at the time of the fire was a *material* misrepresentation.

State Farm also asserts, with respect to this alleged misrepresentation, that the directed verdict was incorrect because it was based on an improper credibility determination by the district court. Specifically, State Farm takes issue with the district court's observation, in its Memorandum Opinion on Directed Verdict, that "it is clear that [Warren] has been threatened with foreclosure in the past, and [Warren] testified that she confused the various foreclosures." While we recognize that "[c]redibility determinations . . . are jury functions, not those of the judge . . . [when] ruling on a motion for . . . a directed verdict," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Davison v. City of Minneapolis, Minn., 490 F.3d 648, 658 (8th Cir. 2007), the district court's statement does not warrant reversal where, as the preceding analysis established, a directed verdict was proper because State Farm failed to demonstrate materiality as a matter of law.

### B.

State Farm asserts that it is entitled to a reversal of the jury's verdict and a new trial on its arson defense because it was prejudiced by the district court's statement to the jury that the court had granted a directed verdict for Warren on the material misrepresentation affirmative defense.[7] State Farm argues that the district court's

---

[7]In both its opening and reply brief to this court, State Farm also contends that the district court erred in denying State Farm's motion for mistrial premised on this same allegedly improper comment. We decline to address this argument. State Farm's notice of appeal does not mention mistrial, see United States v. Rivera Const. Co., 863 F.2d 293, 298 (3d Cir. 1988) ("where the order or judgment upon which the appellant seeks review is neither directly or indirectly referred to in the notice of appeal, then the issue is not fairly raised and the Court of Appeals does not acquire jurisdiction"), nor does it reference a mistrial ruling in the section of its opening brief entitled "Orders Under Review." Neither party mentioned mistrial at oral argument. Though motions of this kind are typically oral, we have reviewed the trial transcript and note that the district court overruled State Farm's objection to the court apprising the jury of its dismissal of the misrepresentation defense; we find no mention of a motion for mistrial in the record. Finally, State Farm has not provided any citation to

comment, in essence, informed the jury that Warren was telling the truth when she said she did not know how the fire started and, thus, she could not have intentionally burned the residence or had someone do so, i.e., commit arson. "The trial court has broad discretion in commenting on evidence" and may do so in order "to give appropriate assistance to the jury." White, 671 F.2d at 1130; see Dobson v. Bacon Transp. Co., 607 F.2d 805, 807 (8th Cir. 1979) ("[T]he trial judge has traditionally been accorded broad discretion in the conduct of his trial . . . ."). The only limitation on this discretion is that the comments must not "preclude a fair evaluation of the evidence by the jury." White, 671 F.2d at 1130; see Dobson, 607 F.2d at 807.

In this case, opening statements addressed both of State Farm's defenses and evidence presented at trial was relevant to both. The district court's statement was necessary to inform the jury that it would not be deciding the issue of material misrepresentation. We know of no other course of action that the district court could have taken in light of its "responsibility for directing the jury in matters of law . . . ." White, 671 F.2d at 1130. Because the district court's comment is not misleading nor does it reflect undue influence, see Dodson, 607 F.2d at 808, the district court did not abuse its broad discretion.

III.

We affirm the judgment of the district court.

_____

---

the record on appeal to enable us to review the motion or its disposition, and our independent search of the record below revealed no indication that State Farm made such a motion.