# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3544

_____

Jon Brawner, (originally identified as    *
John Brawner); Renea Brawner,    *
   *
       Appellants,    *
   *    Appeal from the United States
     v.    *    District Court for the
   *    Eastern District of Arkansas.
Allstate Indemnity Company,    *
   *
       Appellee.    *

_____

Submitted: September 21, 2009
Filed: January 8, 2010

_____

Before BYE, SMITH, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

After a fire of incendiary origin destroyed their house, Jon and Renea Brawner sued Allstate Indemnity Company for denying a claim on a homeowners insurance policy. Allstate asserted that the Brawners' coverage was void because they made several material misrepresentations during Allstate's fire investigation. A jury in a first trial found in favor of Allstate, but the district court granted a new trial. At a second trial, a jury found for Allstate on the misrepresentation defense. The district

court[1] denied the Brawners' renewed motion for judgment as a matter of law and for a new trial. We affirm.

## I.

As of May 2006, the Brawners resided at 10 Dakota Drive in Conway, Arkansas. Their house burned in a fire on May 18, 2006. Renea Brawner had acquired the house during her marriage to Michael Young. Renea kept the house after she divorced Young and married Jon Brawner in 2004. When the fire struck, the property was titled in the names of Michael Young and Renea Young. Allstate insured the property against fire loss through a policy issued to Jon and Renea Brawner. Allstate's cause-and-origin investigator concluded that the fire was the result of arson.

Regions Bank ("Regions") held a first mortgage on the property, based on a loan that Renea Brawner obtained during her marriage to Young. The Veterans Administration ("VA") guaranteed the mortgage loan, which apparently meant that Regions was protected against the loss of principal if the Brawners defaulted. Jon Brawner was not an obligor on the loan, but the Brawners assumed responsibility for the payments. At the time of the fire, the Brawners had failed to make a mortgage payment since December 1, 2005, when they paid the amount due for October 2005. They did not make the payment due for November 2005 or any payments after that point. As a result, before the house burned, Regions initiated a foreclosure proceeding. The house was to be sold in a foreclosure sale on May 22, 2006.

Before the fire, Regions Bank retained the law firm of Dyke, Henry, Goldsholl & Winzerling ("DHG&W") to pursue the foreclosure. Beginning with letters dated

---

[1]The Honorable G. Thomas Eisele, United States District Judge for the Eastern District of Arkansas.

March 14, 2006, DHG&W sent notices of the foreclosure through both certified and first-class mail to several addresses and to several addressees. Most of these notices were returned to DHG&W undelivered, but five mailings were not. One notice dated March 14, 2006, and sent via first-class mail to "Tenants" at 10 Dakota Drive, was not returned. Four first-class letters dated April 7, 2006, and addressed to the Brawners' post office box also were not returned. In addition to the mailings, DHG&W published notice of the default in the *Arkansas Democrat-Gazette* newspaper and posted the notice at the Faulkner County Courthouse.

Four days after the fire, Allstate representative Holly Goodwin took recorded statements from the Brawners as part of a standard fire claim investigation. The Brawners suggested that they had an agreement to sell the house to Jon's business associate, Ben Eagles, and another individual for $160,000 cash, and that the VA had permitted the Brawners to "defer" their recent mortgage payments until the time of the sale. They also asserted that closing on the sale was imminent. Jon Brawner stated that he believed that they were only a couple of months in arrears on their mortgage payments. On the same day, Goodwin visited the Faulkner County Courthouse to check the deed on the property. There, she discovered the notice of foreclosure.

In subsequent examinations under oath, the Brawners each denied knowledge of the foreclosure at the time of the fire. At his examination, Jon Brawner stated that he had filed what he called an "addendum" with the VA in order to defer the mortgage payments.

On November 15, 2006, after an investigation led by claims adjuster Sandra Hendrick, Allstate denied the Brawners' claim. The Brawners filed this action in the district court, alleging several common law causes of action. The district court granted summary judgment in favor of Allstate on all of the claims except breach of contract. At trial, Allstate alleged that the insurance coverage was void because the Brawners were responsible for the arson and had made several material misrepresentations. The

jury found for the Brawners on the arson defense but for Allstate on the misrepresentation defense.  The district court granted the Brawners' motion for a new trial, reasoning that evidence and argument concerning alleged arson by the Brawners may have influenced the jury's decision on the misrepresentation defense.

Prior to the second trial, which focused solely on the misrepresentation defense, the district court ruled that the Brawners would recover on their breach of contract claim if Allstate failed to prove the defense.  After this court's decision in *Warren v. State Farm Fire & Casualty Co.*, 531 F.3d 693 (8th Cir. 2008), the district court denied the Brawners' motion for summary judgment on the misrepresentation defense, but called it a "close question," and opined that *Warren* was "difficult to reconcile" with *Willis v. State Farm Fire & Casualty Co.*, 219 F.3d 715 (8th Cir. 2000).  The jury at the second trial again found for Allstate on misrepresentation.  The district court denied the Brawners' renewed motion for judgment as a matter of law and, in the alternative, for a new trial.

## II.

On appeal, the Brawners contend that they are entitled to a new trial, because the district court erred in admitting four hearsay documents over their objections.  In addition, they maintain that the district court erred in denying their renewed motion for judgment as a matter of law.  Finally, because the jury returned a general verdict in favor of Allstate, the Brawners argue that this court must reverse if we determine that Allstate failed to prove any of the four alleged material misrepresentations.

We review the district court's evidentiary rulings for abuse of discretion, disregarding any error that does not affect the substantial rights of the parties.  *See McPheeters v. Black & Veatch Corp.*, 427 F.3d 1095, 1100-01 (8th Cir. 2005); Fed. R. Civ. P. 61; Fed. R. Evid. 103(a).  We review the denial of a motion for judgment as a matter of law *de novo.  Structural Polymer Group, Ltd. v. Zoltek Corp.*, 543 F.3d

987, 991 (8th Cir. 2008). In doing so, we consider the evidence in the light most favorable to the nonmoving party, Allstate, and affirm "unless no reasonable juror could have reached the same conclusion." *Id.*

A.

The Brawners' first evidentiary argument is that the district court erroneously admitted two documents from Regions's foreclosure file. Both documents were prepared by the VA and then sent to Regions, which kept them in its foreclosure file for the Brawners' residence. Defendant's Exhibit 12 is an unsigned "Acknowledgment" dated February 13, 2006, informing Regions that the VA was on notice of Regions's intent to foreclose. Defendant's Exhibit 13 is a form letter dated April 5, 2006, and signed by VA employee Charles P. Bunkers. The letter imposed a deadline by which Regions was required to complete the foreclosure. Although the relevance of the documents was not well articulated at trial, Allstate apparently offered the two documents to prove that the VA had notice of the foreclosure but did not inform Regions of an alleged "deferral" of payments that the VA supposedly granted to the Brawners. Both were introduced through Regions foreclosure supervisor Tonia Moore.

According to the Brawners, the district court erred in admitting Exhibits 12 and 13 under Rule 803(6) of the Federal Rules of Evidence because Moore, an employee of Regions, could not lay a proper foundation. The Brawners assert that Rule 803(6), the so-called business records exception to the hearsay rule, requires that a representative of the entity that created the document testify for foundation.

Hearsay evidence is inadmissible except as provided by the Federal Rules of Evidence or other rules prescribed by the Supreme Court. Fed. R. Evid. 802. Rule 803(6) provides that the hearsay rule does not exclude a "memorandum . . . made at or near the time by . . . a person with knowledge, if kept in the course of a regularly

conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness." Fed. R. Evid. 803(6).

Although this court has not addressed the precise argument raised here by the Brawners, we have established that the "custodian or other qualified witness need not have personal knowledge regarding the creation of the document offered, or personally participate in its creation, or even know who actually recorded the information." *Resolution Trust Corp. v. Eason*, 17 F.3d 1126, 1132 (8th Cir. 1994) (internal quotation omitted); *see also United States v. Franks*, 939 F.2d 600, 602-03 (8th Cir. 1991). Several other courts have held that a record created by a third party and integrated into another entity's records is admissible as the record of the custodian entity, so long as the custodian entity relied upon the accuracy of the record and the other requirements of Rule 803(6) are satisfied. *See United States v. Adefehinti*, 510 F.3d 319, 325-26 (D.C. Cir. 2007) ("[S]everal courts have found that a record of which a firm takes custody is thereby 'made' by the firm within the meaning of the rule . . . ."); *Air Land Forwarders, Inc. v. United States*, 172 F.3d 1338, 1342-44 (Fed. Cir. 1999); *United States v. Childs*, 5 F.3d 1328, 1333-34 (9th Cir. 1993); *United States v. Duncan*, 919 F.2d 981, 986-87 (5th Cir. 1990). We agree with these courts and hold that the district court did not abuse its discretion by concluding that Allstate was not required to produce an individual from the entity that prepared the record to establish a foundation.

Tonia Moore provided an adequate foundation for Exhibits 12 and 13 under Rule 803(6). Regions integrated the documents created by the VA into the Brawners' foreclosure file. Moore's testimony established that Regions relied on the accuracy of the documents. She testified that Exhibit 12, the acknowledgment of Regions's intent to foreclose, informed Regions that it could begin the foreclosure process. The Brawners do not dispute that Allstate established that the documents were kept in the

course of Regions's regularly conducted business. Accordingly, the district court did not abuse its discretion by admitting Exhibits 12 and 13.

The Brawners next contend that the district court erred in admitting two documents from Allstate's files. Defendant's Exhibit 6 is a letter dated September 12, 2006, from Sandra Hendrick of Allstate to attorney David Waldrop. In the letter, Hendrick asked Waldrop to request information from Regions regarding the Brawners' payment history and to obtain a statement or examination under oath. She also discussed information that she had learned in the investigation. Defendant's Exhibit 7 is a printout of an electronic mail message dated October 20, 2006, from Brenda Ganem, Waldrop's secretary, to Hendrick. In the message, Ganem wrote: "I just spoke with Crystal [Fortier] at [DHG&W]. [Fortier told me that she] has a note in her file [saying] that on May 19, 2006, John [sic] Brawner called and spoke to her. He told [Fortier] that the house had burned." Because Hendrick was on medical leave during the trial, Allstate introduced both documents through Richard Read, an Allstate employee who worked in the same capacity as Hendrick. The district court admitted each document as a business record.

The Brawners argue that the district court erred in admitting Exhibits 6 and 7 under Rule 803(6) for several reasons. According to the Brawners, Richard Read failed to provide an adequate foundation because he never testified that the documents were kept in the course of Allstate's regularly conducted business activity. The Brawners also contend that the documents were not kept in the course of regularly conducted business, because both were the products of Allstate's preparation for litigation.

We doubt that Allstate laid an adequate foundation under Rule 803(6) for Exhibits 6 and 7. Although Allstate's counsel asserted at a bench conference that the exhibits were documents from Allstate's file created in the course of investigating the Brawners' claim, Richard Read's testimony is insufficient to establish whether either

was kept in the course of regularly conducted business or whether, in fact, the documents were prepared in anticipation of litigation.

It is not clear that these exhibits contained hearsay, as opposed to evidence of what information Allstate relied upon in its investigation, *see Ferguson v. United States*, 484 F.3d 1068, 1074 (8th Cir. 2007); *Crimm v. Mo. Pac. R.R. Co.*, 750 F.2d 703, 709 (8th Cir. 1984), but assuming for the sake of argument that the evidence was inadmissible, we conclude that any error was harmless. The Brawners contend that the admission of Exhibit 6 was prejudicial, because it said that Renea Brawner was "supposed to get the loan changed into her name" after her divorce from Michael Young but failed to make the request. This, according to the Brawners, erroneously implied that Renea had engaged in wrongdoing. They assert that the admission of Exhibit 7 was prejudicial because it helped establish that Jon Brawner had notice of the foreclosure before speaking with Allstate investigators. We disagree.

Exhibit 6, the letter from Hendrick to Waldrop, contains mostly insignificant information regarding the investigation and a request for assistance from Waldrop. The statement regarding Renea Brawner's alleged failure to change the loan into her name, even if erroneous, is not pertinent to the disputed issues at trial. The danger that a jury would find against the Brawners on the misrepresentation defense because Renea failed to update the loan information is too speculative to warrant setting aside the verdict. Exhibit 7, the message from Ganem to Hendrick, was indeed evidence that Jon Brawner had notice of the foreclosure before he denied having notice of the same in his statement to Holly Goodwin. But Crystal Fortier of DHG&W testified regarding the same May 19 phone call with Jon Brawner, so Exhibit 7 was largely cumulative. Accordingly, there is no reversible error. *See Hall v. Am. Bakeries Co.*, 873 F.2d 1133, 1136-37 (8th Cir. 1989).

B.

The Brawners next challenge the district court's denial of their post-trial motion for judgment as a matter of law. They contend that Allstate presented insufficient evidence that their statements during the investigation were misrepresentations. Allstate alleged at trial that the Brawners misled its investigators regarding the extent of the mortgage payment arrearage, their knowledge of the foreclosure at the time of the fire, the purported sale of the house, and the alleged deferral of payments by the VA. The Brawners also argue that even if there were proof of misrepresentations, Allstate failed to prove that each misrepresentation related to a "material" fact or circumstance.

Under Arkansas law, the language of the insurance contract governs whether an insurer may withhold coverage on the basis of the insured's allegedly false statements. *See Warren*, 531 F.3d at 699. The Brawners' policy stated that Allstate "d[id] not cover any loss or occurrence in which any insured person has concealed or misrepresented any material fact or circumstance." (Appellant's App. 317). The district court instructed the jury, without objection, that to sustain its defense, Allstate was required to prove that the Brawners knowingly and intentionally concealed from Allstate or misrepresented to Allstate material facts or circumstances prior to Allstate's denial of the insurance claims, all with the intent to defraud Allstate. *See Warren*, 531 F.3d at 699.

Allstate offered evidence of several false or misleading statements made by the Brawners during the investigation of the fire. When asked by Holly Goodwin on May 22, 2006, whether they were current on their mortgage and whether their "payments [were] up to date," Renea Brawner answered that the "last few payments" were deferred for the sale of the house, which was supposed to "close" on the day after the fire. When asked essentially the same question, Jon Brawner replied, "I believe [we are] a couple months [behind] or so." He went into some detail regarding the

purported sale, asserting that a contract was signed approximately thirty days earlier. Jon stated that it was a "buy-sell agreement . . . to sell the property for $160,000, buyer to pay closing costs." He later added that it was a "cash deal" and that Eagles had "cash on hand" and a "line of credit," and that the "only thing that was pending was getting us out, more or less."

The tenor of the Brawners' statements did not change at their subsequent examinations under oath. At her examination on July 28, 2006, Renea was asked if she was "aware" of the planned sale of the house, and she answered yes. She stated that she "wouldn't know the details" regarding the financial shape they were in at the time of the fire, but acknowledged that they "were behind on a couple of things," including their mortgage payments. She denied knowing at the time of the fire that the property was in foreclosure. When confronted with information that they had been seven months behind on payments at the time of the fire, Renea Brawner stated that she "knew it was probably more than a couple months," but was unsure of the extent of the arrearage.

At his examination on September 8, 2006, Jon was asked again about the arrearage, and he stated that he believed that they were three months in arrears at the time of the fire. He asserted that he had filed an "addendum" with the VA about one month before the fire in order to defer the payments. When asked whether anyone told him that he could defer making payments, Jon replied that an individual at the VA said it "wouldn't be any problem at all." Jon was also confronted with information that he and Renea were seven months in arrears, to which he replied, "I don't believe that's right," but "[i]f the [VA] deferral's not listed, then it could possibly be six months out." When asked again whether it was his belief that the mortgage payments were only three months in arrears, he answered, "Yeah, absolutely." In response to a question regarding whether he had been "unaware" that the property was to be sold for the foreclosure on May 22, Jon responded, "Not in any shape, form or fashion."

Allstate proved that the Brawners misrepresented the extent of the mortgage payment arrearage and notice of the foreclosure through the testimony of Crystal Fortier of DHG&W. Fortier testified regarding the five unreturned foreclosure notices sent to either 10 Dakota Drive or to the Brawners' post office box. She asserted that the unreturned notice dated March 14, 2006, and sent to 10 Dakota Drive was addressed to "Tenants." The four notices dated April 7 and sent to the Brawners' post office box were addressed to "Michael L. Young," "Current Spouse of Michael L. Young," "Renea Hawkins Young," and "Current Spouse of Renea Hawkins Young." Allstate established that the Brawners' bank statements were sent to the same post office box, and Jon Brawner testified that they tried to retrieve mail from the box every week. Furthermore, as noted, Fortier testified that Jon Brawner called DHG&W – the law firm handling the foreclosure – on May 19 to report the fire, suggesting that he had received the foreclosure notices. Fortier's testimony provided adequate circumstantial evidence that the Brawners were aware of their mortgage status. From this evidence, the jury reasonably concluded that the Brawners intended to mislead Allstate regarding their arrearage and notice of the foreclosure.

Allstate also presented sufficient circumstantial evidence that the purported sale of the house was a sham. Despite Jon Brawner's May 22 suggestion that the "buy-sell agreement" was a certainty, Eagles first testified in a deposition that he did not attempt to obtain financing for the purchase because they were doing an "owner finance," such that he would get a "contract for deed." At trial, Eagles stated that he did attempt to obtain financing but was unsuccessful in doing so. He then asserted that because his financing fell through, he intended to "put $10,000 down on the property and then come back and refinance it at a later date." He testified that at the time of the fire (and thus mere days before Jon Brawner asserted to Goodwin that the deal was for $160,000 cash), he was "getting ready to give them the $10,000."

Allstate also introduced three different purported contracts that Jon Brawner and Ben Eagles presented to Allstate to substantiate the sale. Brawner and Eagles

gave inconsistent explanations for why they signed multiple contracts: Brawner testified that there was a typographical error in the first agreement; Eagles said he had lost the first contract. The third contract listed a closing date of May 16, two days before the fire, although the investigation showed that no sale had closed before the fire. Therefore, a reasonable jury could infer from Eagles's testimony and the suspicious nature of contracts that the purported sale was not legitimate, and that the Brawners intended to mislead Allstate.

Finally, Allstate offered sufficient evidence that the Brawners misrepresented the existence of a "deferral" of mortgage payments granted by the VA. Allstate's evidence showed that the VA had notice of the foreclosure and did not inform Regions that payments would be deferred. Fortier testified that she ordered an appraisal of the property as part of the foreclosure process and sent a copy of the order sheet to the VA, thus notifying the VA of the foreclosure. Allstate presented Exhibit 12, the VA's acknowledgment of Regions's intent to foreclose, and Exhibit 13, the letter setting a deadline for the foreclosure, to demonstrate that Regions received documents from the VA regarding the Brawners' loan. Tonia Moore, supervisor of the foreclosure department at Regions, then testified that Regions's file included no *other* communication from the VA regarding a deferral or a request to stop the foreclosure sale, and that she would have been apprised if the VA contacted Regions to stop the foreclosure. *See generally* Fed. R. Evid. 803(7) (excepting from the hearsay rule evidence of the absence of an entry in records as proof of the nonoccurrence or nonexistence of a matter normally recorded); *Kaiser Aluminum & Chem. Corp. v. Ill. Cent. Gulf R.R.*, 615 F.2d 470, 476 (8th Cir. 1980). This evidence that the VA did not send a notice of a "deferment" to Regions, despite the pending foreclosure and the VA's communication of other information about the loan, was sufficient for the jury to conclude that the Brawners did not actually secure a deferment and intended to mislead Allstate on that point.

In *Warren*, we held that two alleged misrepresentations made during the course of a fire claim investigation did not pertain to "material" facts or circumstances, noting in part that the insurer "produced no evidence . . . [that the misrepresentation] altered the course of its investigation or its treatment of . . . [the insured's] claim in any way." 531 F.3d at 700. Much of the Brawners' materiality argument supposes that *Warren* requires Allstate to prove that it altered its investigation in response to each misrepresentation. In *Willis*, however, we stated that the materiality of a statement is evaluated as of the time that statement was made, setting aside the benefit of hindsight. 219 F.3d at 718. *Willis* also established that actual reliance is not an element of the insurer's defense. *Id.* at 718-19. *Warren* did not purport to alter these principles, and indeed reiterated that a misrepresentation is "material" if it is "reasonably relevant to the insurer's investigation" and pertains to facts or circumstances that are relevant to the insurer's rights "to decide upon its obligations and to protect itself against false claims." 531 F.3d at 699 (internal quotation marks and citations omitted). The language in *Warren* about altering the course of investigation or treatment of the claim is best understood as an effort to explain why the disputed statements in that case were not "reasonably relevant" to the investigation in that case, not as a declaration that an insurer must prove actual reliance.

The misrepresentations at issue in this case all pertained to the Brawners' debt on the insured property and their knowledge of the same at the time of the fire. The Brawners' assertions on May 22 that they were only a couple of months in arrears, that they had secured a cash deal to sell the house, and that, because of the sale, the mortgage payments were deferred suggested that their financial worries regarding the insured property were minimal. A jury reasonably could conclude that a significant discrepancy existed between these misrepresentations and the truth, and that the misrepresentations could have hindered Allstate's investigation of the fire. Accordingly, a reasonable jury could find that each of these misrepresentations pertained to a material fact or circumstance.

-13-

Although Allstate learned on May 22 that the property was in foreclosure, the subsequent investigation understandably looked to whether the Brawners had knowledge of the foreclosure at the time of the fire. Therefore, the Brawners' July 28 and September 8 misrepresentations denying knowledge of the foreclosure also were relevant. A jury could have concluded that the Brawners misled Allstate regarding the mortgage payment arrearage, their knowledge of the foreclosure, the sale of the house, and the receipt of the deferral to understate their financial problems regarding the insured property and thus to deflect suspicion that they were responsible for the fire. Accordingly, a reasonable jury could have concluded that each of the four statements was "an attempt to deceive the insurer with respect to material facts, even if the insurer was unable to prove arson." *Willis*, 219 F.3d at 720.[2]

\*       \*       \*

For the foregoing reasons, the judgment of the district court is affirmed.

_____

---

[2]Because we conclude that the evidence was sufficient to establish all four material misrepresentations, we need not address the Brawners' argument regarding the general verdict.

-14-