FLOYD R. GIBSON, Senior Circuit Judge.
 

 King Enterprises, Inc. (King), a construction company, agreed to build an aircraft hangar for Falcon Jet Corporation (Falcon), an airplane manufacturer with facilities in Little Rock, Arkansas. Mr. and Mrs. George King are the sole shareholders in King Enterprises.
 

 In March 1979, King commenced excavation of the hangar site for Falcon. In June, nearly three months later, George King was the first to sign a document entitled “Construction Contract, New Facilities for Falcon Jet Corporation at Municipal Airport, Little Rock, Arkansas” (hereinafter referred to as the contract).
 

 
 *75
 
 The contract was undated and does not describe with particularity the facilities to be constructed by King. The contract does state a price for the project of $950,000. The contract also contains the following provision in its appendix:
 

 13-01 PREFABRICATED METAL BUILDINGS — The prefabricated metal buildings shown on the drawings will be furnished and installed by others and will not be included in this contract. The metal building manufacturer will also furnish and install all rolling hangar doors and anchor bolts to be embedded in foundation for anchoring metal buildings.
 

 Nevertheless, King did furnish and install a prefabricated metal building for Falcon as part of the project here at issue.
 

 The contract provided that any changes in the work to be performed would be by written change-order.
 
 [1]
 
 However, during the course of construction, numerous changes were made on oral directives and only two written change orders were executed.
 

 After the completion of the hangar (referred to as hangar number five), Falcon refused to pay King for the changes which were not represented by written change orders. King was thus unable to pay many of its suppliers and subcontractors and subsequently sought relief under Chapter 11 of the United States Bankruptcy Code.
 

 King also filed this action against Falcon in the United States Bankruptcy Court for the Eastern District of Arkansas, Western Division. The case was tried before a jury. Falcon admitted owing King $136,191, representing the price stated in the written contract, plus the two written change orders, less the sum of $914,114 previously paid to King by Falcon. The jury found that Falcon owed King an additional sum of $252,087. Thus, judgment was entered for $388,278. The judgment was appealed to the United States District Court for the Eastern District of Arkansas,
 
 [2]
 
 which affirmed the judgment of the bankruptcy court. We affirm the district court.
 

 George King first became involved with a Falcon project in late 1976. At that time Falcon was developing plans for two hangars (referred to as hangars number three and four), which were constructed before the hangar which is the subject of this suit. Mr. King was, at the time, working for the company which designed, manufactured, and subcontracted the erection of hangars three and four. King obtained the contract for his company with Falcon for the hangars and then acted as the agent or liaison between his company and Falcon during the construction. Mr. King attended weekly construction meetings attended by the contractors for hangars three and four. King became aware of the practice on that project that most change orders were given orally and were never reduced to writing, despite a provision in the controlling contract to the contrary.
 

 King argued before the trial court and here that he assumed that a similar practice would be followed on hangar number five. He testified that he informed Falcon before beginning the project that the hangar could not be built for $950,000, as originally estimated, and that the Falcon vice president in charge of contracts advised him that the $950,000 figure written in on the contract was just a starting point and that there would be additions and changes.
 

 King filed, tried, and submitted this case to the jury on three alternative theories for recovery. They are:
 

 
 *76
 
 1. King should recover the written contract amount, plus the amounts agreed to by written and oral change orders.
 

 2. King should recover the written contract amount, plus the amount agreed to by written change order, plus the reasonable value of the prefabricated metal building built by King which was specifically excluded from the written contract.
 

 3. King should recover by
 
 quantum meruit,
 
 or the reasonable value of the hangar, due to the absence of agreement between the parties on all the essential terms of the contract.
 

 Falcon has raised five issues on this appeal. It argues that the court erred (1) in admitting invoices from King’s subcontractors as evidence of extra cost accrued, (2) in finding that King proved its damages with reasonable certainty, (3) in failing to find that King’s failure to inform Falcon that extra items of work would be considered additions to the contract precluded the existence of a binding modification of the contract, (4) in finding that change orders did not have to be in writing and signed by an authorized agent of King, and (5) in failing to find that King, by executing a written change, order on July 25, 1979, waived the right to collect costs incurred on extras performed before July 25. King contends that all of the issues raised by Falcon on this appeal are moot because the errors alleged would only be prejudicial on the first theory for recovery whereas the amount of the jury’s verdict is consistent only with the second and third theories for recovery. Under theory one, King testified there were 39 oral changes to the “contract” totaling $157,798. The jury verdict was for $252,087 additional. This shows clearly that the jury’s verdict was not based on theory number one and therefore the general verdict must rest on theory two or three. We will, however, briefly address the merits of Falcon’s contentions of error, as we believe that resolution of the issues raised therein may have had some relevancy in the jury’s evaluation of Falcon’s contentions.
 

 I. The Course of Conduct
 

 First, the course of conduct of the parties to this suit negates the idea that they proceeded on the Falcon project solely under the terms of the contract. It was not until nearly three months after construction of the hangar began that the contract was even signed by George King, the first party to sign it. The contract was undated, and presumably was prepared by Falcon.
 

 In addition, King, by virtue of his participation in the building of hangars three and four, was aware that, contrary to provisions in the contract which supposedly governed that project, oral change orders were routinely given by Falcon and followed by the job coordinator. Upon the completion of hangars three and four, Falcon had a reconciliation meeting with the general contractor at which it was agreed that Falcon would pay an amount over and above the contract price as compensation for those oral changes. Mr. King had reason to believe that he would be compensated for expenses incurred in executing oral change orders as well.
 

 Furthermore, the two written change orders which were executed for the hangar number five project incorporated, for the most part, changes which had been completed prior to the signing of the orders by any Falcon employee. This was done, with the parties’ knowledge, in spite of the specific contract provision governing changes which required that no changes be made in the work or material “except upon
 
 prior
 
 written order of the Owner.”
 
 See ante
 
 at n.l (emphasis added). This is the very provision which Falcon relies so heavily on in arguing its case against King.
 

 II. Election of Remedies
 

 King had the right, under federal rules of procedure, to submit different theories for recovery to the jury. Federal Rule of Civil Procedure 8(e)(2) expressly provides: “A party may set forth two or more statements of a claim or defense alternatively or hypothetically, either in one count or defense or in separate counts or defenses.... A party may also state as many separate claims or defenses as he has re
 
 *77
 
 gardless of consistency and whether based on legal, equitable, or maritime grounds.” Rule 8(a) provides,
 
 inter alia:
 
 “Relief in the alternative or of several different types may be demanded.” The court properly refused to require King to elect a theory upon which to proceed.
 
 Transit Casualty Co. v. Transamerica Insurance Co.,
 
 387 F.2d 1011, 1017-18 (8th Cir. 1967);
 
 Myzel v. Fields,
 
 386 F.2d 718, 740 and n.15 (8th Cir. 1967),
 
 cert. denied,
 
 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1143 (1968);
 
 Breeding v. Massey,
 
 378 F.2d 171, 177-78 (8th Cir. 1967); 2A J. Moore, Moore’s Federal Practice ¶ 8.31[2] (2d ed. 1982).
 
 See Twin City Federal Savings & Loan Association v. Transamerica Insurance Co.,
 
 491 F.2d 1122, 1124-25 (8th Cir. 1974). It follows, then, that any errors committed in admitting evidence related only to recovery on a theory which is inconsistent with the verdict rendered would not be considered prejudicial. In this case, however, we cannot say that any of the evidentiary issues raised were without relevancy to theories two and three. We thus proceed to discuss the issues raised.
 

 III. The Issues
 

 In order to prove the cost of the work outside the scope of the contract ordered by Falcon, King introduced the invoices it received from businesses which supplied materials and services for this extra work. The invoices were admitted under Fed.R.Evid. 803(6),
 
 [3]
 
 which excepts, under certain circumstances, records of regularly conducted business activities from the hearsay rule. Falcon contends that the invoices do not fall within the exception and are in fact hearsay. We find that the invoices are within permissible limits for proving the cost of the various changes ordered by Falcon. It was within the trial judge’s discretion to admit the evidence if he found it to be sufficiently trustworthy.
 
 United States v. Goins,
 
 593 F.2d 88, 91-92 (8th Cir. 1979);
 
 United States v. Page,
 
 544 F.2d 982, 987 (8th Cir. 1976);
 
 United States v. Pfeiffer,
 
 539 F.2d 668, 670-71 (8th Cir. 1976).
 
 See
 
 Fed.R.Evid. 803(24) and 804(b)(5).
 

 Next, Falcon contends that King’s methods for computing the extra labor costs result in charges which are too speculative and uncertain to be used as a basis for computing damages. We find, however, that the means by which King chose to prove its damages was not as a matter of law improper. “It is sufficient if a reasonable basis of computation is afforded, although the result be only approximate.”
 
 General Insurance Co. of America v. Hercules Construction Co.,
 
 385 F.2d 13, 23 (8th Cir. 1967),
 
 quoting Eastman Kodak Co. v. Southern Materials Photo Co.,
 
 273 U.S. 359, 379, 47 S.Ct. 400, 405, 71 L.Ed. 684 (1927).
 

 Falcon argues that King failed to prove a legally binding modification of the contract provision regarding change orders so that the variance from the contract price would be justified. It urges that a valid modification requires an offer, an acceptance, consideration, mutual consent, and definiteness of terms. As discussed in Part I,
 
 ante,
 
 we believe that the jury’s verdict was not based solely, if at all, on interpretation of the contract between Falcon and King but, at least in part, on the course of conduct followed by the parties. All of the changes in the contract were undertaken at the direction of Falcon employees. There was substantial evidence presented at trial that the Falcon representatives responsible for the building of hangar five were aware of the numerous changes being made by King. The jury could reasonably have con-
 
 *78
 
 eluded that Falcon, by its course of conduct, waived the contract provision requiring written change orders.
 

 Under the same reasoning, we reject Falcon’s argument that King failed to prove modification or waiver of the contract provision which required that change orders be signed by an authorized agent. Given the evidence in this case, there is no doubt that the Falcon employees who were authorized to approve changes were aware of the fact that changes were being made on oral directives from Falcon employees. Falcon waived its right to insist that changes be in writing and signed by an authorized agent.
 

 The last issue raised by Falcon concerns the final written change order, which was executed on July 25, 1979. Falcon urges that, as a matter of law, all prior agreements were merged into the written agreement and King waived the right to collect for any costs incurred on extras performed before that date which were not claimed in the written change order. Most of the changes at issue here were executed subsequent to July 25, 1979. Also, it is likely, as argued by King, that, given the size of the jury’s verdict, the jury based its judgment on a
 
 quantum meruit
 
 formula, either for the prefabricated building not included in the contract or for the job as a whole. This would moot the issue here presented by Falcon. At any rate, the final written change order would supersede all prior agreements only if the evidence indicated that this was the intent of the parties when they entered the written agreement.
 
 See e.g., Carolina Casualty Insurance Co. v. Helms,
 
 248 F.2d 268, 273 (8th Cir. 1957); 3 Corbin on Contracts § 582. The evidence adduced does not demonstrate the requisite intent.
 

 In conclusion, this case was properly submitted to and decided by the jury. We affirm the jury’s verdict and judgment. Costs assessed against appellant.
 

 [1]
 

 . The provision reads:
 

 The Owner shall have the right, without invalidating or affecting the terms of this contract, to order additions, omissions or other modifications in the extent and character of the work hereunder, whether substantial or otherwise. In case any such additions, omissions or other modifications involve an increase or decrease in the value of the work to be performed under this contract, then an equitable adjustment shall be made in the amount payable to the Contractor under this contract, provided, however, that no such additions or omissions or modifications shall be made in the work or material except upon prior written order of the Owner.
 

 [2]
 

 . Honorable Henry Woods, United States District Judge, Eastern District of Arkansas.
 

 [3]
 

 . Fed.R.Evid. 803(6), covering records of regularly conducted business activity, exempts the following from the hearsay rule:
 

 A memorandum, report, record, or data computation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.