# United States Court of Appeals
### For the Eighth Circuit

_____

No. 17-3636
_____

Connie Jean Smith, Individually and on behalf of all others similarly situated

*Plaintiff - Appellant*

v.

SEECO, Inc., Now known as SWN Production (Arkansas), LLC; Desoto
Gathering Company, LLC; Southwestern Energy Services Company;
Southwestern Energy Company

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: January 15, 2019
Filed: April 23, 2019

_____

Before SMITH, Chief Judge, COLLOTON and ERICKSON, Circuit Judges.

_____

ERICKSON, Circuit Judge.

Connie Jean Smith was the named plaintiff in a class action suit against Southwestern Energy Company ("Southwestern") and three of its subsidiaries alleging underpayment of gas royalties. The defendants prevailed at trial. Smith now

appeals, arguing that a new trial is warranted because of the district court's[1] erroneous evidentiary and trial management rulings. Smith also requests certification of certain questions of state law to the Arkansas Supreme Court. We deny the motion to certify and affirm.

## I.    Background

SEECO, a subsidiary of Southwestern, began developing the Fayetteville Shale formation in 2004. DeSoto Gathering Company ("DeSoto"), a separate Southwestern subsidiary, was created to act as the gathering company for SEECO's operations. DeSoto accepted business as a gathering company for other producers as well. SES, another Southwestern subsidiary, marketed and sold SEECO's gas. SEECO and DeSoto entered into a Dedicated Field Services Agreement ("Agreement") to govern the terms of DeSoto's gathering, compression, and treatment services.

As part of its operations SEECO entered into leases with landowners to obtain gas from their land. The typical lease provided a one-eighth royalty interest in the proceeds derived from the sale of gas captured from the leasehold. Connie Jean Smith leased acreage to SEECO under the standard one-eighth royalty lease. The terms of Smith's lease permitted deductions from the royalty for "all reasonable gathering, transportation, treatment, compression, processing, and marketing costs that are incurred by [SEECO] in connection with the sale" of the gas. Consistent with the lease, SEECO deducted certain costs paid to its fellow Southwestern subsidiary DeSoto for its "gas gathering" services.

Smith sued on behalf of a class claiming that SEECO underpaid royalties because it had engaged in self-dealing when it reduced the royalty payment to reflect

---

[1]The Honorable Brian S. Miller, Chief Judge, United States District Court for the Eastern District of Arkansas.

-2-

the amounts it paid to DeSoto for gathering. Specifically, Smith alleged that Southwestern engaged in self-dealing by instructing DeSoto to charge inflated rates to SEECO for the costs of DeSoto's services. Smith also contended that each of Southwestern's three subsidiaries were shells established and used by Southwestern to secure greater profits at the expense of landowners. Smith claimed that the improper cost deductions allowed Southwestern to gain nearly $100 million in profits between 2006 to the present. Smith sued on theories of breach of contract, fraud and deceit, unjust enrichment, violations of various Arkansas statutes, and civil conspiracy.

In pretrial motions, the district court was asked to decide whether the amounts DeSoto charged SEECO qualified as gathering, treatment, and compression costs incurred in connection with the sale of the gas under the lease. Smith had argued that because those costs were paid by a third Southwestern subsidiary, SES, they were not costs "incurred" by SEECO. SEECO countered that SES acted as its agent and that in return for paying SEECO's costs, the amount of the costs were later deducted from what SES owed SEECO. The district court agreed with SEECO that SEECO "incurred" those costs "when it became liable to pay for DeSoto's services." In making its partial grant of summary judgment, the district court reserved for the jury the issue of whether the costs were reasonable. The district court granted a motion *in limine* prohibiting references to the partial grant of summary judgment.

During the trial, SEECO sought to establish the reasonableness of its costs by comparing the rate it paid DeSoto to the rates other producers in the Fayetteville Shale region paid for gathering. Part of SEECO's offered evidence related to the post-production costs of BHP, another operator that sent royalty statements to Smith. SEECO offered the BHP statements which reflected specific post-production costs that were higher per unit of gas than those SEECO had deducted. Smith objected, claiming the statements were inadmissable hearsay and that they were unduly prejudicial and irrelevant. The district court overruled the objections, holding that the

statements were covered by the business records exception to the hearsay rule and would aid the jury in determining the reasonableness of DeSoto's rates.

SEECO also sought to introduce evidence of a term sheet from 2005 between SEECO and DeSoto for the purpose of showing that their agreements were "arms-length." Smith objected claiming the 2005 term sheet was not timely disclosed and had only been produced 25 days before trial. The district court sustained Smith's objection as to the admission of the term sheet, but allowed questions related to any witness's personal knowledge of the term sheet. In making this ruling, the court found that the evidence was relevant to rebut Smith's claim that the contract negotiations were a sham.

John Thaeler, the former head of SEECO, and Gene Hammons, the former head of DeSoto, were among the witnesses who testified about the term sheet. Their testimony laid in significant details about the term sheet, including how the term sheet was first created and what it was designed to cover. Smith did not object when this testimony was received. Smith later renewed her overall objections concerning the term sheet when questions were asked of DeSoto employee Josh Weber. The district court overruled the objections and allowed Weber to testify about his personal knowledge of the term sheet.

Southwestern briefly questioned Smith about the pre-suit notice provision in her lease. Because such provisions are inapplicable to breach-of-contract suits in Arkansas as a matter of law,[2] the district court gave a curative instruction directing the jury to ignore that paragraph of the contract when deciding whether Smith complied with the contract.

---

[2]TXO Prod. Corp. v. Page Farms, Inc., 698 S.W.2d 791, 794 (Ark. 1985) (citing Texas Oil & Gas Corp. v. Vela, 429 S.W.2d 866 (Tex. 1968)).

During the trial, SEECO's counsel made several comments in the presence of the jury which implied that the action was actually on behalf of Smith's lawyers, rather than Smith. For example, in closing argument SEECO's counsel stated "I'm not going to focus on Dr. Smith. I don't think this lawsuit is her idea. The arguments that these lawyers are making make no sense for anybody…." The district court twice sustained objections to SEECO's suggestion that the suit was driven by her lawyers.

In SEECO's closing argument, counsel briefly stated that they "had not heard" from any other royalty owners complaining about DeSoto's practices. The district court responded with a curative instruction:

> [T]here was a concern brought to my attention that I want to address with you. Understand that this is a class action. And we talked about it when we got started. And the plaintiff, Connie Jean Smith, is the class representative who represents the class. So whatever position she takes in this courtroom is the position of the class. And to the extent that you have heard anything or you in any way think that her position may not be the same as other class members in any way, you have to disregard that because her—she is the class representative and her position is the position of everybody who has opted into this lawsuit or declined to opt out.

SEECO asked the district court to give a jury instruction substantially mirroring the district court's grant of partial summary judgment that the costs incurred by SEECO were costs incurred as gathering and compression costs under the contract. The jury instruction provided by the court only stated that SEECO "was allowed to deduct all reasonable gathering, transportation, treatment, compression, processing, and marketing costs that [we]re incurred by SEECO in connection with the sale of gas." The court allowed both sides to argue their interpretation to the jury.

At the conclusion of deliberations, the jury returned a full defense verdict, finding that the deducted costs were both incurred and reasonable. Smith filed a

motion for a new trial, or in the alternative, relief from the judgment. The district court denied the motions. Smith now appeals.

Additionally, Smith has moved to certify two questions of law to the Arkansas Supreme Court: (1) Whether SEECO "incurred" costs as a matter of Arkansas law under its arrangement with DeSoto and SES, and (2) whether, under Arkansas law, payment for "costs incurred" may include rates of payment under which DeSoto (the gathering company) makes a profit, or whether they must be limited to actual costs.

## II.  Discussion

### A.  Partial Grant of Summary Judgment

We review the district court's partial grant of summary judgment *de novo*, viewing the evidence in the light most favorable to the non-moving party. Barry v. Barry, 78 F.3d 375, 379 (8th Cir. 1996) (citing Michalski v. Bank of America Ariz., 66 F.3d 993, 995 (8th Cir. 1995)). When reviewing a grant of summary judgment, "[w]e will consider only evidentiary materials that were before the trial court at the time the summary judgment ruling was made." Id. (citing Fed. R. App. P. 10(a); Amerinet, Inc. v. Xerox Corp., 972 F.2d 1483, 1489–90 (8th Cir. 1992)). "We review the denial of a motion for a new trial for a 'clear' abuse of discretion, with the key question being whether a new trial is necessary to prevent a miscarriage of justice." Dindinger v. Allsteel, Inc., 853 F.3d 414, 421 (8th Cir. 2017) (quoting Hallmark Cards, Inc. v. Murley, 703 F.3d 456, 462 (8th Cir. 2013)).

Smith claims that the evidence available to the district court was insufficient to support a grant of partial summary judgment on the question of whether or not SEECO "incurred" costs in its relationship with DeSoto where SES actually paid DeSoto. Smith argues that this error necessitates a new trial. We doubt that the district court erred by concluding that SEECO had "incurred" costs when the

evidence before it established the existence of a legal obligation held by SEECO to ensure that DeSoto was paid. See Hall v. United States, 566 U.S. 506, 520 (2012) ("[T]he ordinary meaning of 'incur' [is] bringing a liability upon oneself."). We need not definitively resolve that question, since the instructions provided to the jury did not include the legal ruling and Smith was allowed to argue for her favored position. Cf. Cavataio v. City of Bella Villa, 570 F.3d 1015, 1024 (8th Cir. 2009) (holding that "any error in granting [partial] summary judgment . . . was harmless" in light of the trial record). The district court's actions following the grant of summary judgment tended to favor Smith, rather than SEECO, ranging from granting a motion *in limine* prohibiting references to the partial grant of summary judgment to denying SEECO's request for a jury instruction that "SEECO's incurred costs are the fees DeSoto charged for its services to SEECO." Any error in granting the motion was harmless in light of the district court's management of the issue during the trial.

B.      Motion to Certify Questions of State Law

As part of her arguments over whether or not SEECO "incurred" certain costs, Smith requests that we certify two questions to the Arkansas Supreme Court:

1.      Whether SEECO "incurred" costs for gathering and treatment under the express and implied covenants of its form oil and gas lease, as a matter of Arkansas law, where (a) the services were performed by one affiliate, DeSoto, (b) billed to and "cleared" by another affiliate, SES, and (c) all three of these entities are subsidiaries of their common parent, SWN; and

2.      Whether the express and implied covenants in the lease, as a matter of Arkansas law, allow SEECO to deduct from royalty payments as "costs incurred" fees for gathering and treatment at rates that provide profit to SEECO's affiliate, DeSoto, over and above the costs actually incurred by DeSoto.

"Absent a close question and lack of state sources enabling a nonconjectural determination, a federal court should not avoid its responsibility to determine all issues before it." Shakopee Mdewakanton Sioux Cmty. v. City of Prior Lake, Minn., 771 F.2d 1153, 1157 n.2 (8th Cir. 1985) (quotation marks omitted). We accept the basic principle that federal courts "should be slow to honor a request for certification from a party who chose to invoke federal jurisdiction." 17A Charles Alan Wright, Arthur R. Miller et al., Fed. Prac. & Proc. Juris. § 4248 (3d ed. 2017 update) (collecting cases). We are also mindful of Arkansas's standards for accepting requests for certification, which require "all facts material to the question of law to be determined" to be "undisputed" plus the existence of "special and important reasons" such as conflicting decisions in the courts or "an unsettled issue of the constitutionality or construction of a statute of this State." Longview Prod. Co. v. Dubberly, 99 S.W.3d 427, 429 (Ark. 2003).

In light of these principles, certification of the proposed questions would be improper. Whether SEECO incurred certain costs is an ordinary question of contract interpretation which federal courts are well-equipped to answer. Cf. Torti v. Hoag, 868 F.3d 666, 671–72 (8th Cir. 2017) (applying Arkansas law to a breach-of-contract claim). Smith chose to bring her case in a federal forum and, having received an unfavorable outcome, now seeks a second bite of the apple. Because the questions she raises are not the type of "close questions" that might be aided by certification to the Arkansas Supreme Court, we decline the invitation to certify them.

### C.    BHP's Royalty Statements

Smith argues that BHP's royalty statements should have been excluded on both relevance and hearsay grounds. "A district court's decision to admit or exclude testimony is reviewed for an abuse of discretion." Bady v. Murphy-Kjos, 628 F.3d 1000, 1002 (8th Cir. 2011) (quoting Quigley v. Winter, 598 F.3d 938, 946 (8th Cir. 2010)). "A district court enjoys wide discretion in ruling on the admissibility of

proffered evidence, and evidentiary rulings should only be overturned if there was a clear and prejudicial abuse of discretion." Id. (quoting Quigley, 598 F.2d at 946).

The district court did not abuse its discretion by admitting the statements. The statements were relevant because they aided the jurors in determining whether the costs incurred by SEECO were reasonable. Cf. Atlantis Express, Inc. v. Standard Transp. Servs., Inc., 955 F.2d 529, 537–38 (8th Cir. 1992) (affirming interstate carrier's rates as "reasonable" in light of "an extensive comparison of rates between [appellee] and other . . . carriers that offered the same or similar services in the same territory during the same time period"). Admission under the business records exception to the Hearsay Rule was proper under Federal Rule of Evidence 803(6), which "excepts, under certain circumstances, records of regularly conducted business activities from the hearsay rule." In re King Enterprises, Inc., 678 F.2d 73, 77 (8th Cir. 1982). Under that rule, a "record created by a third party and integrated into another entity's records is admissible as the record of the custodian entity, so long as the custodian entity relied upon the accuracy of the record and the other requirements of Rule 803(6) are satisfied." Brawner v. Allstate Indem. Co., 591 F.3d 984, 987 (8th Cir. 2010). Smith identified the evidence as a statement that she got directly from BHP in the ordinary course of receiving royalty payments. The district court had "discretion to admit the evidence if [it] found it to be sufficiently trustworthy." In re King Enterprises, Inc., 678 F.2d at 77 (citing United States v. Goins, 593 F.3d 88, 91–92) (8th Cir. 1979)).

D.    Questioning Regarding the 2005 Term Sheet

Smith also contends the district court erred by permitting SEECO to question witnesses about the existence of a 2005 term sheet even though it denied admission of the term sheet itself. Since the term sheet was produced before trial but after the discovery window had closed, we consider this argument as a challenge to the district court's imposition of discovery sanctions. Essentially Smith argues that the sanction

was insufficient to address the harm. We review the district court's sanctions concerning discovery violations for abuse of discretion. Sentis Grp., Inc. v. Shell Oil Co., 559 F.3d 888, 898 (8th Cir. 2009) (citation omitted). "Our scope of review regarding discovery matters is very narrow . . . [and] we are unlikely to fault the district court's judgment on discovery matters absent a gross abuse of discretion resulting in fundamental unfairness in the trial of the case." Davis v. Am. Jet Leasing, Inc., 864 F.2d 612, 614 (8th Cir. 1988) (cleaned up) (quoting Prow v. Medtronic, Inc., 770 F.2d 117, 122 (8th Cir. 1985)).

The issue presented to the district court was how to handle a document produced 25 days prior to trial but admittedly outside the discovery period. Neither party disputes that the term sheet was highly relevant to the issues at trial. Despite the late disclosure and the apparent relevance of the evidence, Smith took no affirmative step to respond to the disclosure such as moving *in limine* to suppress the term sheet or, in the alternative, for a continuance so she could depose the witnesses on the new evidence. Instead Smith waited until the time that the evidence was about to be offered to seek its exclusion. Ordinarily the district court has broad authority to impose a wide range of sanctions for discovery violations. By waiting to raise the objection, Smith circumscribed the sanctions practically available to the district court. This was a tactical decision apparently designed to increase the likelihood that the evidence would be suppressed. The district court appropriately exercised its discretion to impose a more moderate sanction that limited SEECO's ability to introduce the actual document but which allowed it to ask witnesses about their personal knowledge of the statement. If Smith suffered any prejudice when witness testimony contradicted Smith's argument that no such term sheet existed, that prejudice was a direct result of Smith's tactical decision and not the district court's ruling.

It appears that Smith may also be arguing that the term sheet testimony went beyond the district court's sanction for the untimely disclosure. To the extent this

-10-

contention is raised, Smith forfeited her argument by failing to object when the first two witnesses discussed their knowledge of the document. Day v. Toman, 266 F.3d 831, 837 (8th Cir. 2001) (quoting Powell v. Burns, 763 F.2d 337, 338 (8th Cir. 1985)). Further, Smith has not carried the heavy burden of demonstrating plain error. By the time Smith objected, during the testimony of Josh Weber, the evidence was cumulative and any error was harmless. Wilson v. City of Des Moines, 442 F.3d 637, 644 (8th Cir. 2006) (citing Smith v. Firestone Tire & Rubber Co., 755 F.2d 129, 132 (8th Cir. 1985)).

### E. Questioning Regarding the Pre-suit Notice Provision

"We normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions." Greer v. Miller, 483 U.S. 756, 766 n.8 (1987) (quoting Richardson v. Marsh, 481 U.S. 200, 208 (1987)). Smith has not shown the requisite overwhelming probability. The district court's instruction was a correct statement of the law and properly informed the jury that it was not to consider the provision when evaluating Smith's claims. The district court's conclusion that "any resulting prejudice caused to plaintiffs by this testimony was minimal and certainly not a miscarriage of justice requiring a new trial under Rule 59" was not erroneous.

### F. Statements by SEECO's Counsel Suggesting Inadequacy of Class Representation and Maligning Opposing Counsel

Smith argues that she is entitled to a new trial because comments made by SEECO's counsel insinuated that Smith was represented by "plaintiff lawyers" whose arguments did not make "sense for anybody." We consider three factors in determining whether a lawyer's comments warrant a new trial: (1) the extensiveness of the improper remarks; (2) the absence of any meaningful curative instruction; and

(3) whether any damage award was exorbitant. <u>Gilster v. Primebank</u>, 747 F.3d 1007, 1011–12 (8th Cir. 2014). The district court sustained Smith's objections and instructed the jury to disregard the statements. No new trial is warranted given the court's curative instruction and the limited nature of the remarks.

Smith also claims that comments by SEECO's counsel may have inappropriately suggested to the jury that Smith was not an adequate class representative. The district court responded by giving a lengthy curative instruction that included telling the jury "to the extent that you have heard anything or you in any way think that [Smith's] position may not be the same as other class members in any way, you have to disregard that." Given our presumption that "a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions," the district court appropriately denied Smith's motion for a new trial. <u>Greer</u>, 483 U.S. at 767 n.8 (quoting <u>Richardson</u>, 481 U.S. at 208).

## III.  Conclusion

We deny Smith's motion to certify questions of law to the Arkansas Supreme Court and affirm the district court's judgment.

_____